IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **RICHARD A. DOTTERER,** | : | **CIVIL ACTION** |
| Plaintiff, | : | |
| | : | |
| v. | : | **NO. 13-06903** |
| | : | |
| **THOMAS PINTO, ET AL.,** | : | |
| Defendants. | : | |

# M E M O R A N D U M

**Stengel, J.**                                                                                    **February 10, 2014**

This is a § 1983 suit related to injuries inflicted on the plaintiff by police officers during his DUI arrest. The plaintiff alleges that he was tasered eleven times by several officers while he was handcuffed and restrained in the back of a police vehicle. The defendants move to dismiss under Rule 12(b)(6). For the reasons set forth below, I will grant the motion in part and deny in part.

## I.   BACKGROUND[1]

Plaintiff Richard Dotterer claims involve both the Borough of Catasauqua and its police officers and the Borough of North Catasauqua and its police officers; both police departments are alleged to have been involved in the arrest giving rise to this action.

On March 9, 2013, Plaintiff Richard Dotterer was arrested by Catasauqua police officer John P. Lakits and charged with a DUI, driving with a suspended license, resisting arrest, accidents involving damage to unattended vehicle/property, and simple assault. The plaintiff alleges that, while he was handcuffed in the back of the police car,

---

[1] The allegations stated are taken from plaintiff's complaint, Doc. No. 1, unless otherwise stated.

Catasauqua Police Officer Thomas Pinto and North Catasauqua Police Officer Rebecca Saborsky—along with other unidentified officers—tasered him eleven times. The plaintiff also alleges that, at one point, one of these officers handed the taser to a civilian bystander (who had recently been discharged), asking that person to hold the taser gun while the taser prongs and wire were still attached to the plaintiff; allegedly that officer made this request of the bystander so that the officer could approach the plaintiff. Officer Latkits, the arresting officer, never tasered the plaintiff and directed the other officers to cease and desist the tasering of the plaintiff.

Officer Lakits affidavit of probable cause stated that Officer Saborsky had used her taser to dry stun the plaintiff but that did not work so North Catasauqua tasered him with darts which appeared to have little effect.[2]

The plaintiff was then taken to Lehigh Valley Hospital—Muhlenberg where he was admitted.[3] The plaintiff's medical records from March 9, 2013 indicate that he was tasered eleven times and that two barbs were still in place in the plaintiff's right arm and back when he arrived.[4]

Subsequently, the plaintiff brought this § 1983 suit against Officer Pinto, Officer Saborsky, Catasauqua Police Chief Douglas Kish, North Catasauqua Police Chief Kim Moyer, the Borough of Catasauqua, and the Borough of North Catasauqua. He alleges that the excessive use of force during his arrest violated his Fourth, Eighth, and

---

[2] Plaintiff's Brief in Opposition to Defendants' Motion to Dismiss, Doc. No. 11 at 2.

[3] Id.

[4] Id.

Fourteenth Amendment rights. He asserts three counts: 1) an excessive use of force claim against Officers Pinto and Saborsky (Count One) under the Fourth, Eighth, and Fourteenth Amendments; 2) a failure to train/failure to supervise claim against Police Chiefs Kish and Moyer; and 3) a failure to train/failure to supervise claim against the Boroughs of Catasauqua and North Catasauqua. Defendants North Catasauqua, Kim Moyer, and Thomas Pinto move to dismiss the complaint for failure to state a claim. Defendants Catasauqua, Kish, and Saborsky also move to dismiss under Rule 12(b)(6). Since both their motions make similar arguments, I will address them both in this memorandum.[5]

## II.    STANDARD OF REVIEW

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted examines the legal sufficiency of the complaint.[6]  Conley v. Gibson, 355 U.S. 41, 45-46 (1957).  The factual allegations must be sufficient to make the claim for relief more than just speculative. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).  In determining whether to grant a motion to dismiss, a federal court must construe the complaint liberally, accept all factual allegations in the complaint as true, and draw all reasonable inferences in favor of

---

[5] The Borough of Catasauqua and its agents only contest the claims being brought under the Eighth Amendment; they do not challenge the claims under the other amendments. They join in and incorporate by reference the arguments made by the Borough of North Catasauqua and its agents with regards to the failure to supervise/municipal liability claims.

[6] In deciding a motion to dismiss, the court should consider the allegations in the complaint, exhibits attached to the complaint, and matters of public record.  See Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).  The court may also consider "undisputedly authentic" documents when the plaintiff's claims are based on the documents and the defendant has attached copies of the documents to the motion to dismiss. Id.  This includes items in the case's record. Brody v. Hankin, 299 F.Supp 2d 454, 458 (E.D.Pa. 2004).

the plaintiff. Id.; see also D.P. Enters. v. Bucks County Cmty. Coll., 725 F.2d 943, 944 (3d Cir. 1984).

The Federal Rules of Civil Procedure do not require a plaintiff to plead in detail all of the facts upon which she bases her claim. Conley, 355 U.S. at 47. Rather, the Rules require a "short and plain statement" of the claim that will give the defendant fair notice of the plaintiff's claim and the grounds upon which it rests. Id. The "complaint must allege facts suggestive of [the proscribed] conduct." Twombly, 550 U.S. at 564. Neither "bald assertions" nor "vague and conclusory allegations" are accepted as true. See Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997); Sterling v. Southeastern Pennsylvania Transp. Auth., 897 F. Supp. 893 (E.D. Pa. 1995). The claim must contain enough factual matters to suggest the required elements of the claim or to "raise a reasonable expectation that discovery will reveal evidence of" those elements. Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) (quoting Twombly, 550 U.S. at 556).

A court "may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Brown v. Card Service Center, 464 F.3d 450, 456 (3d Cir. 2006)(quoting Hishon v. King & Spalding, 467 U.S. 69, 73 (1984)).

### III. DISCUSSION

"To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the Constitution and the laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West

v. Atkins, 487 U.S. 42, 48 (1988). Count I speaks to the first part of this claim, while Counts II and III speak to the second part pertaining to color of law.

### a. Count One: Excess Force

The plaintiff alleges that his constitutional rights under the Fourth, Eighth, and Fourteenth Amendments were violated by the excessive use of force during his arrest. The defendants argue that the Eighth Amendment protections do not apply because the plaintiff had not been convicted at the time of the incident.[7] I agree. "Eighth Amendment scrutiny is appropriate only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions." Bell v. Wolfish, 441 U.S. 520, 534 n. 16 (1979)(quoting Ingraham v. Wright, 430 U.S. 651, 671-672, n. 40 (1977))(quotation marks omitted). Since the plaintiff had not gone through formal criminal proceedings at the time of the incident, it is clear that the Eighth Amendment would not apply here.

The use of excessive force during an arrest, however, is a cognizable constitutional violation under the Fourth Amendment. Id. The Fourth Amendment provides, "The right of the people to be secure in their persons ... against unreasonable searches and seizures, shall not be violated."[8] The use of excessive force during an arrest goes to the question of whether the seizure of the person was reasonable.

---

[7] The plaintiff responded by offering Chavez v. Martinez, 538 U.S. 760 (2003), as support that the Eighth Amendment would apply. However, the plaintiff failed to pinpoint what parts of this fragmented opinion support his argument. I also did not find anything in the opinion that would bolster this argument.

[8] A seizure occurs when a suspect "submits to the police's show of authority or the police subject him to some degree of physical force." Abraham v. Raso, 183 F.3d 279, 291 (3d Cir.1999). There appears to be no question here that the plaintiff was, in fact, seized in line with the Fourth Amendment definition.

How much force is reasonable in effectuating an arrest is based on the "totality of the circumstances," including: 1) the severity of the crime at issue, 2) the immediate threat to the safety of the officers or others that the suspect poses, 3) whether the suspect is resisting or evading arrest, 4) how "violent or dangerous" the suspect is, 5) the "duration" of the force, 6) whether the force was used in making an arrest, and 7) whether the suspect might be armed, and 8) the number of people with whom the police must contend. See Graham v. Connor, 490 U.S. 386, 396 (1989)(citing Tennessee v. Garner, 471 U.S. 1, 8–9, (1985)); Sharrar v. Felsing, 128 F.3d 810, 822 (3d Cir.1997). Reasonableness is evaluated from the perspective of a reasonable officer on the scene. Carswell v. Borough of Homestead, 381 F.3d 235, 240 (3d Cir. 2004)(citing Graham, 490 U.S. at 396).

The use of a taser during an arrest, especially when the suspect is resisting arrest, may be reasonable. See, e.g., Brown v. Cwynar, 484 Fed.Appx. 676, 681 (3d Cir. 2012)(noting how the use of taser on a suspect resisting arrest is not inherently "excessive force"). However, the plaintiff's allegation that he was tasered *eleven* times while he was handcuffed in the backseat of a police car is enough to make out a plausible claim of excessive force under the Fourth Amendment.[9]

---

[9] The defendants also argue that the plaintiff cannot bring his claims under the Fourteenth Amendment. Again, they are correct. A claim of excessive force during an arrest cannot be properly analyzed under substantive due process. Abraham v. Raso, 183 F.3d 279, 288 (3d Cir.1999)(Graham v. Connor, 490 U.S. 386, 395 (1989)). The Fourteenth Amendment, in itself, would not provide a basis for relief.

The plaintiff did not specify under which part of the Fourteenth Amendment he was bringing his claim. See Abraham v. Raso, 183 F.3d 279, 288 (3d Cir.1999); Graham v. Connor, 490 U.S. 386, 393-94 (1989). However, the plaintiff's Fourth Amendment claim may implicate the Fourteenth Amendment as a basis for applying the Fourth Amendment claim to the state actors. For this reason, I will allow the Fourteenth Amendment to stand but note that it cannot be considered a basis for relief in itself.

### b. Counts Two and Three: Failure to Train

In accord with the second requirement of a § 1983 action, the plaintiff asserts a failure to train and a failure to supervise claim against Chiefs of Police Kish and Moyer and their respective municipalities. Under § 1983, "[a] municipality may be liable for failing to train its employees if that failure amounts to deliberate indifference" so long as this failure is closely related to the plaintiff's ultimate injuries. A.M. v. Luzerne County Juvenile Detention Center, 372 F.3d 572, 582 (3d Cir.2004)(citing City of Canton v. Harris, 489 U.S. 378, 389–90 (1989)).[10] While this type of claim is typically shown through a pattern of constitutional violations, "[a] single constitutional violation can still provide the basis for municipal liability for failure to train, ... but only where the 'need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights' that the policymaker's inaction amounts to deliberate indifference." Christopher v. Nestlerode, 240 F. App'x. 481, 489–90 (3d Cir.2007) (quoting Canton, 489 U.S. at 391)(quotation marks omitted).[11] Specifically, the Supreme Court has noted that the failure to train officers on the use of deadly force during an arrest as one "so obvious" example. See Canton, 489 U.S. at 390 n. 10.

Under this rationale, the need to train officers in how and when to use a taser gun

---

[10] "[T]he failure to provide proper training may fairly be said to represent a policy for which the city is responsible, and for which the city may be held liable if it actually causes injury." City of Canton v. Harris, 489 U.S. 378, 389–90 (1989)(explaining how the failure to train rubric is consistent with § 1983 analysis under Monell v. Department of Social Services of City of New York, 436 U.S. 658 (1978)).

[11] See Connick v. Thompson, 131 S. Ct. 1350, 1361 (2011)(reaffirming Canton's assertion that a municipality's deliberate indifference to a "highly predictable consequence" could be enough to establish a failure to train claim). But see Berg v. County of Allegheny, 219 F.3d 261, 276 (3d Cir. 2000)("Failure to adequately screen or train municipal employees can ordinarily be considered deliberate indifference only where the failure has caused a pattern of violations.").

to subdue a person during arrest could be "so obvious" and "highly predictable" such that a showing of repeated constitutional violations may be unnecessary. See Geist v. Ammary, No. 11–07532, 2012 WL 6762010, at *7 (E.D.Pa. Dec. 20, 2012). Additionally, the plaintiff has indicated that several officers were present and/or involved while he was tasered multiple times. The plaintiff also provides evidence that the officers continued tasering the plaintiff because the darts seemed to have little effect on him.[12] Thereby, the plaintiff's injury was not simply the result of one officer's mistake or error.[13] These allegations call into question whether the officers (collectively) were properly trained in using tasers or in how to handle a person who may need to be subdued.

For these reasons, I find that the plaintiff has sufficiently made out a claim for a failure to train, in order to overcome a motion to dismiss.[14]

### c. Counts Two and Three: Failure to Supervise

For a supervisor to be liable for a failure to supervise his or her subordinates, the plaintiff must: "(1) identify the specific supervisory practice or procedure that the supervisor failed to employ, and show that (2) the existing custom and practice without the identified, absent custom or procedure created an unreasonable risk of the ultimate

---

[12] Officer Lakits reported that Officer Saborsky used her taser to dry stun the plaintiff and that the North Catasauqua police then tasered him with their darts which did not appear to have much effect. Plaintiff's Memorandum in Opposition to the Motion to Dismiss, Doc. No. 11 at 2.

[13] See Canton, 489 U.S. at 387 ("Nor, without more, would a city automatically be liable under § 1983 if one of its employees happened to apply the policy in an unconstitutional manner, for liability would then rest on *respondeat superior*.").

[14] The plaintiff will, however, have to "show both contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents and circumstances under which the supervisor's actions or inaction could be found to have communicated a message of approval to the offending subordinate." Montgomery v. De Simone, 159 F.3d 120, 127 (3d Cir. 1998) (citing Bonenberger v. Plymouth Township, 132 F.3d 20, 25 (3d Cir.1997)). At this stage, this information would not be available to the plaintiff.

injury, (3) the supervisor was aware that this unreasonable risk existed, (4) the supervisor was indifferent to the risk; and (5) the underling's violation resulted from the supervisor's failure to employ that supervisory practice or procedure."[15] Brown v. Muhlenberg Twp., 269 F.3d 205, 216 (3d Cir. 2011)(citing Sample v. Diecks, 885 F.2d 1099, 1118 (3d Cir.1989)).

There appears to be little question that the use of a taser gun eleven times on a suspect who is handcuffed in the back of a police car would pose an obvious risk to the arrestee, speaking to the first two factors of the Brown test. As to the remaining factors, the plaintiff offers information sufficient to make out a claim. Two factual allegations suggest that the incident occurred in the vicinity of the police station: 1) that several officers, who were not the arresting officer, were allegedly involved; and 2) that one of the officers allegedly handed the taser gun to a civilian who had recently been discharged. From these factual allegations, a reasonable inference can be drawn that a supervisor could have been aware of the incident and failed to control the officers involved.[16] In addition, the plaintiff has alleged that the supervisors failed to discipline the officers for this conduct and may not have preserved evidence as related to the

---

[15] Additionally, "where a supervisor with authority over a subordinate knows that the subordinate is violating someone's rights but fails to act to stop the subordinate from doing so, the factfinder may usually infer that the supervisor 'acquiesced' in (i.e., tacitly assented to or accepted) the subordinate's conduct." Montgomery, 159 F.3d at 127.

[16] This point would speak to the last three factors regarding the supervisor's awareness and then response. At this stage, what the supervisors knew or didn't know would not be information available to the plaintiff and would be developed more during discovery.

incident.[17] These allegations are enough to plausibly show acquiescence by the police chiefs and the borough.

For these reasons, the plaintiff has pled enough to support his failure to supervise claim at this stage, in order to overcome a motion to dismiss.[18]

## IV. CONCLUSION

For the reasons stated above, I will grant the defendants' motions as to the claims under the Eighth Amendment but deny the defendants' motions to dismiss in all other regards.

An appropriate Order follows.

---

[17] Again, the details behind these allegations are ones that would not be readily available to the plaintiff at this stage. I expect they will be developed during discovery.

[18] The defendants also argue that the plaintiff's inclusion of the word "liberty" in his constitutional violations against the supervisors impermissibly serves as a collateral attack on the plaintiff's convictions related to the arrest. I would not necessarily infer from the pleadings that this is what the plaintiff is attempting nor is the relief being sought by this suit. However, if the plaintiff pursues this sort of argument or relief later, the defendants can raise their argument again then.