IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RICHARD A. DOTTERER | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | NO. 13-06903 |
| | : | |
| THOMAS PINTO, ET AL., | : | |
| Defendants. | : | |

M E M O R A N D U M

Stengel, J.                                          January 27, 2016

This is a Section 1983 suit related to injuries inflicted on the plaintiff by police officers during his DUI arrest.  The plaintiff alleges that he was tasered eleven times by several officers while he was handcuffed and restrained in the back of a police vehicle. The defendant police chiefs and boroughs move for summary judgment.  For the reasons stated below, I will grant their motions.[1]

I.    BACKGROUND[2]

A.  The parties

At the time of his arrest, the plaintiff, Richard Dotterer, resided in North Catasauqua, Pennsylvania.  Doc. No. 36 ¶ 1.  Involved in his arrest were officers from both the Borough of North Catasauqua ("North Catasauqua") and the Borough of Catasauqua ("Catasauqua").  Id. at ¶¶ 3-4.  Defendant Officer Thomas Pinto was a full-

---

[1] The individual police officers named in the complaint – Officers Thomas Pinto and Rebecca Saborsky – have not moved for summary judgment.  As such, this opinion will only address the claims against the defendant police chiefs and boroughs.

[2] Where the facts are not disputed, I will refer to them as stated in the defendants' statement of undisputed facts.  See Doc. Nos. 36 & 39.

time police officer for North Catasauqua.  Id. at ¶ 4.  Defendant Kim Moyer is North

Catasauqua's chief of police.  Id. at ¶ 3.

Two police officers from Catasauqua also were involved in the plaintiff's arrest.

Defendant Officer Rebecca Saborsky was a part-time Catasauqua police officer.  Doc. No.

39 at ¶ 2.  Officer Lakits was a full-time Catasauqua police officer.[3]  Doc. No. 36 at ¶ 7.

Defendant Douglas Kish is Catasauqua's chief of police.  See Doc. No. 39 at 10.

**B.  The arrest**

On March 9, 2013, the plaintiff was involved in a hit and run accident while

driving his Camaro.  Doc. No. 36 at ¶ 8.  He was arrested that same day.  Id. at ¶10.  At

the time of his arrest, the plaintiff had a blood alcohol content of 0.16 percent.  Id. at ¶ 9.

There also was cocaine in his system.  Id.  Ultimately the plaintiff pleaded guilty to DUI

– high rate of alcohol, 3rd Offense (75 Pa.C.S. § 3802(b)) –and resisting arrest (18

(Pa.C.S. § 5104).  Id. ¶ 10.

Officer Lakits was the first to arrive at the scene of the arrest.  Id. at ¶ 11.  He was

accompanied by a "ride along," Peter Hamati-Attieh.  Id.  They found the plaintiff in an

alley in Catasauqua speaking with a friend, Charles Schmitt.  Id.  Initially, the plaintiff

denied being involved in an accident and threatened to run because he did not want to go

to jail.  Id. ¶ 13.

Defendant Pinto responded to a radio call for back up from Officer Lakits.  Id. at ¶

17.  In doing so, defendant Pinto activated the police lights on his car, which also

---

[3] Although present at the scene of the incident and involved in the plaintiff's arrest, Officer Lakits has not
been named as a defendant in this suit.

activated the car's camera.  Id.  Upon arrival in the alleyway, defendant Pinto observed

Officer Lakits speaking with three individuals, including the plaintiff.  Id. at ¶ 18.

Eventually, Officer Lakits was able to handcuff the plaintiff in the front.  Id. at ¶ 19.   The

plaintiff was then placed in the back of Officer Lakits' police car without incident.  Id. at

¶ 21.  Officer Pinto then turned off the lights and camera in his police car, which was

parked behind Officer Lakits' car.[4]  Pinto Dep. 83:8-1, July 8, 2014.

　　　After defendant Pinto turned off the lights and camera in his car, the plaintiff

became upset.  Although the plaintiff was described as calm when he was placed into

Officer Lakits' car, he later began to cry and talk about a fight that he had had with his

girlfriend.  Hamati-Attieh Dep. 31:3-19, June 4, 2014; Doc. No. 36 at ¶ 25.  After he was

told that he was going to be taken to the DUI processing center, the plaintiff continued to

become more agitated as he sat in the back of Officer Lakits' car.[5]  See Hamati-Attieh

Dep. 32: 2-6.  The plaintiff began to scream and then began to grab the window bars on

the driver passenger side.  Hamati-Attieh Dep. 32:20-22;  33:1-14.  According to Mr.

Hamati-Attieh, the plaintiff's actions caused the entire police car to shake.  Hamati-Attieh

Dep. 33:13.

　　　During the course of the arrest, both in the back of Officer Latkis' police car and

while in the ambulance, the plaintiff was tased by both defendant Pinto and defendant

Saborsky.  See Doc. No. 36 at ¶35; Saborsky Dep. 59:11-16, 58:18-19, July 1, 2014.  The

printout from defendant Pinto's taser reflects that his taser was discharged seven times on

---

[4] The parties dispute the reasons why Officer Pinto turned off the camera.  See Doc. No. 40 at ¶ 22.  This dispute is not relevant to the instant motions for summary judgment.
[5] The parties dispute who notified the plaintiff that he would be placed under arrest.  This dispute, however, is not relevant to the instant motions for summary judgment.

March 9, 2010, the date of the incident.  Doc. No. 36 at ¶ 75 (citing Doc. No. 36-11).

Defendant Saborksy's taser was discharged five times that same night.  <u>See id.</u> (citing

Doc. No. 36-15).  The police chief defendants were not present at the incident.  <u>See id.</u> at

¶ 76 -77; <u>see also</u> Doc. Kish Dep. 8:3-12, June 9, 2014 (noting that Chief Kish first

learned about the incident within a week after the incident occurred).

### C.  North Catasauqua's policies, procedures, and taser training

North Catasauqua had several written policies that pertained to taser usage in place

at the time of the plaintiff's arrest.  These policies included written standard operating

procedures, which govern the use of force and also applied to taser use.  Doc. No. 36 at ¶

78.  <u>Id.</u>  Additionally, North Catasauqua had a taser specific use of force policy.  <u>See</u>

Doc. No. 36-17.  This policy, which became effective December 18, 2006, was in effect

at the time of the plaintiff's arrest.  Doc. No. 36 at ¶ 79; <u>see also</u> Doc. No. 36-17.  Lastly,

North Catasauqua had a more general "Use of Force" policy.  Doc. No. 36 at ¶ 80; <u>see</u>

<u>also</u> Doc. No. 36-18.

All police officers employed by the North Catasauqua Police Department received

training on the use of force and taser use.  <u>Id.</u>  As a North Catasauqua police officer,

defendant Pinto received training and was recertified in taser use on December 21, 2012.

Doc. No. 36 at ¶¶ 82–83 .  At that time, defendant Pinto passed the taser training and was

recertified to use a taser.  <u>Id.</u> at ¶ 83.  As part of that training and recertification program,

defendant Pinto was required to sit for and passed a written test by correctly answering

48 out of 50 questions.  <u>Id.</u> at ¶ 97.

### D.  Catasauqua's policies, procedures , and taser training

All Catasauqua police officers were required to attend taser training at least once a year.  Doc. No. 39 at ¶ 14.  This training was conducted by Detective Christopher Wittick, a full-time Catasauqua police officer.  Id. at ¶ 13.

Defendant Saborsky received both Act 120 Training, the initial training required by state law, and training specific to taser use.  Id. at ¶¶ 4-6.  She first completed taser training and received a certification in taser use on August 9, 2009.  Id. at ¶ 5.  She also received additional training, testing, and recertification in the use of taser on three later dates—February 28, 2011, April 5, 2012, and November 28, 2012.  Id. at ¶ 6.

### E.  The plaintiff's Complaint

The plaintiff initiated this § 1983 suit against Officer Pinto, Officer Saborsky, Catasauqua Police Chief Douglas Kish, North Catasauqua Police Chief Kim Moyer, the Borough of Catasauqua, and the Borough of North Catasauqua by filing a complaint on November 26, 2013.  See Doc. No. 1.  His complaint asserts three counts: (1) an excessive use of force claim against Officers Pinto and Saborsky (Count One) under the Fourth and Fourteenth Amendments; (2) a failure to train/failure to supervise claim against Police Chiefs Kish and Moyer; and (3) a failure to train/failure to supervise claim against the Boroughs of Catasauqua and North Catasauqua.[6]  The Catasauqua defendants – the borough and Douglas Kish – and the North Catasauqua defendants – the borough and Kim Moyer – now move for summary judgment on counts two and three of the

---

[6]  Initially, the plaintiff's Complaint contained references to the Eighth Amendment as a basis for relief. On February 10, 2014, I issued an Order striking all references to the Eighth Amendment as a basis for relief from the plaintiff's Complaint.  See Doc. No. 16.

complaint. See Doc. Nos. 35 & 38.  Since both motions make similar arguments, I will address them together in this memorandum.

## II.     STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute is "genuine" when "a reasonable jury could return a verdict for the nonmoving party" based on the evidence in the record. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A factual dispute is "material" when it "might affect the outcome of the suit under the governing law." Id.

A party seeking summary judgment initially bears responsibility for informing the court of the basis for its motion and identifying those portions of the record that "it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Where the non-moving party bears the burden of proof on a particular issue at trial, the moving party's initial Celotex burden can be met simply by demonstrating to the district court that "there is an absence of evidence to support the non-moving party's case."  Id. at 325.  After the moving party has met its initial burden, the adverse party's response must cite "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials."  FED. R. CIV. P. 56(c)(1). Summary judgment is therefore appropriate when the non-moving party fails to rebut by making a factual showing that is "sufficient to establish the existence of an element

essential to that party's case, and on which that party will bear the burden of proof at

trial." Celotex, 477 U.S. at 322.

Under Rule 56 of the Federal Rules of Civil Procedure, the court must draw "all

justifiable inferences" in favor of the non-moving party.  Anderson, 477 U.S. at 255. The

court must decide "not whether . . . the evidence unmistakably favors one side or the

other but whether a fair-minded jury could return a verdict for the plaintiff on the

evidence presented."  Id. at 252.  If the non-moving party has produced more than a

"mere scintilla of evidence" demonstrating a genuine issue of material fact, then the court

may not credit the moving party's "version of events against the opponent, even if the

quantity of the [moving party's] evidence far outweighs that of its opponent."  Big Apple

BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992).

## III.   DISCUSSION

Section 1983 provides a plaintiff with remedies when his or her Constitutional

rights or rights provided by federal law have been deprived.  See Tunsil v. City of

Philadelphia, No. 14-CV-2383, 2015 WL 7717244, at *2 (E.D. Pa. Nov. 30, 2015) ; see

also Rivera v. Nutter, No. 13-6931, 2014 WL 3855335, at *1 (E.D. Pa. Aug. 6, 2014).

"To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right

secured by the Constitution and the laws of the United States, and must show that the

alleged deprivation was committed by a person acting under color of state law." West v.

Atkins, 487 U.S. 42, 48 (1988); see also Kaucher v. Cnty. of Bucks, 455 F.3d 418, 423

(3d. Cir. 2006).

"[A] municipality cannot be held liable <u>solely</u> because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a <u>respondeat superior</u> theory." <u>Monell v. Dep't of Soc. Servs. of City of New York</u>, 436 U.S. 658, 691 (1978)(emphasis in original). Rather, "it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." <u>Id.</u> at 694; <u>see also</u> <u>Geist v. Ammary</u>, 40 F.Supp.3d 467, 486 (E.D. Pa. 2014).

The plaintiff essentially brings two claims against defendants Moyer and Kish and their respective boroughs. First, he asserts a failure to train claim. Second, he asserts a failure to supervise claim. I will address both claims below in turn. [7]

---

[7] As a threshold matter, the plaintiff contends that there is a genuine issue of material fact regarding the defendant boroughs and police chiefs properly trained and supervised the defendant officers because the plaintiff's expert, William T. Gaut, Ph.D., offered such an opinion. <u>See</u> Doc. No. 43 at 9. While Dr. Gaut does provide such an opinion, he does not rely upon any facts or evidence when arriving at his opinion. Rather, he simply provides a conclusory statement that "[t]he only intervening factor is the evidence of improper training, wherein officers'' respective Chiefs of Police, through constructive approval, approved the unlimited use of a TASER as acceptable police conduct." <u>See</u> Doc. No. 42-4 at 18. As such, I find that the plaintiff's expert's opinion is impermissibly speculative with regards to his opinion on whether the defendants boroughs and police chiefs failed to train the defendant officers and as such, does not meet the requirements of Federal Rule of Evidence 702(b), which requires that expert testimony be based on "sufficient facts or data." FED. R. EVID. 702(b); <u>see also</u> <u>Bell v. Arvin Meritor, Inc.</u>, No. 12-00131, 2013 WL 5549540, at *1 (E.D. Pa. Oct. 4, 2013)(finding same). Because I find that Dr. Gaut's opinions are not admissible, they are not sufficient to create a genuine issue of material fact such that summary judgment would be inappropriate. This finding, however, does not constitute a determination on the admissibility of Dr. Gaut's report at trial with regards to his opinions regarding whether the defendant police officers utilized reasonable force on the night of the incident.

### A. Failure to train

The plaintiff alleges that he was harmed by the defendant boroughs and their respective police chiefs' failure to provide their police officers with adequate taser training.  The defendant boroughs and their respective chiefs, however, are entitled to summary judgment on the plaintiff's failure to train claims as no reasonable jury could find that they have adopted a policy or custom of insufficient training such that it shows deliberate indifference towards their citizens' constitutional rights.

A municipality may be "subject to liability for a constitutional violation committed by an employee if that 'employee has not been adequately trained and the constitutional wrong has been caused by that failure to train.'" Martin v. City of Reading, No. 5:12-CV-03665, 2015 WL 4601120, at *12 (E.D. Pa. July 31, 2015) (quoting City of Canton v. Harris, 489 U.S. 378, 387 (1989)).  The Supreme Court, however, has noted that such liability is rare, as "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." Connick v. Thompson, 563 U.S. 51, 61 (2011).  Thus, the Third Circuit has concluded that establishing a failure to train claim under Section 1983 is difficult, because plaintiffs "must identify a failure to provide specific training that has a causal nexus with their injuries and must demonstrate that the absence of that specific training can reasonably be said to reflect a deliberate indifference to whether the alleged constitutional deprivations occurred." Reitz v. Cnty. of Bucks, 125 F.3d 139, 145 (3d Cir. 1997).

It is not enough, however, for a plaintiff to allege "than an injury could have been avoided by more or better training—the deficiency identified by a plaintiff must be

closely related to the ultimate injury." Bean v. Ridley Twp., No. CIV.A. 14-5874, 2015 WL 568640, at *5 (E.D. Pa. Feb. 10, 2015) (citing Grazier ex rel. White v. City of Phila., 328 F.3d 120, 125 (3d Cir.2003)).  Further, not all inadequate training will constitute a violation of Section 1983.  Martin, 2015 WL 4601120, at *12.  Rather, it is only where "a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983."  City of Canton, 489 U.S. at 388, 389-90 ("[T]he failure to provide proper training may fairly be said to represent a policy for which the city is responsible, and for which the city may be held liable if it actually causes injury.")(explaining how the failure to train rubric is consistent with § 1983 analysis under Monell v. Dep't of Social Serv. of City of N.Y., 436 U.S. 658 (1978)); see also Campbell v. City of Philadelphia, 927 F.Supp.2d 148, 172 (3d Cir. 2013)(citations omitted)(explaining how a municipality may only be liable "if the failure to train 'amounts to deliberate indifference to the rights of persons with whom the police come into contact.'"); Brown v. Muhlenberg Twp., 269 F.3d 205, 215 (3d Cir. 2001)(liability for the failure to train "arises only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact.")(citation and internal quotation marks omitted).

While such a claim is typically shown through a pattern of constitutional violations, "[a] single constitutional violation can still provide the basis for municipal liability for failure to train." Christopher v. Nestlerode, 240 F. App'x. 481, 489–90 (3d Cir. 2007).  A single constitutional violation is sufficient, however, "only where the 'need

for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights' that the policymaker's inaction amounts to deliberate indifference." Id. at 489–90 (quoting Canton, 489 U.S. at 391)(quotation marks omitted); see also Connick, 536 U.S. at 64 ("[T]he unconstitutional consequences of failing to train could be so patently obvious that a city could be liable under § 1983 without proof of a pre-existing pattern of violations."); but see Berg v. Cnty. of Allegheny, 219 F.3d 261, 276 (3d Cir. 2000)("Failure to adequately screen or train municipal employees can ordinarily be considered deliberate indifference only where the failure has caused a pattern of violations.").  As I noted in my decision regarding the defendants' motion to dismiss, "the need to train officers in how and when to use a taser gun to subdue a person during arrest could be 'so obvious' and 'highly predictable' such that a showing of repeated constitutional violations may be unnecessary."  Doc. No. 15 at 8; see also Geist v. Ammary, No. 11-07532, 2012 WL 6762010, at *7 (E.D. Pa. Dec. 20, 2012).

Here, plaintiff's claims revolve around the proposition that the defendants should be held liable because they failed to ensure that their officers were instructed "that a person in custody locked in the back of a police car and in handcuffs cannot be shot with a gun or a taser."  See e.g., Doc. No. 1 at ¶ 26.  I have found, however, no case, nor has the plaintiff provided this Court with a case, that stands for the proposition that the tasering of an individual handcuffed in the back of a police vehicle is per se a constitutional violation.  Rather, whether an officer's taser use constituted excessive force to effect an arrest in violation of the Fourth Amendment, is determined by evaluating the "totality of the circumstances," as described by the Supreme Court in Graham v. Connor,

490 U.S. 386, 395-96 (1989) and later expanded upon by the Third Circuit in <u>Sharrar v.</u>

<u>Felsing</u>, 128 F.3d 810, 818 (3d Cir.1997) <u>abrogated on other grounds by</u> <u>Curley v. Klem</u>,

499 F.3d 199 (3d Cir. 2007).[8]  <u>See</u> <u>Patrick v. Moorman</u>, 536 F. App'x 255, 258 (3d Cir.

2013).

### a.  Defendants North Catasauqua and Chief Moyer

The plaintiff does not identify any specific training that North Catasauqua and/or

defendant Moyer should have provided defendant Pinto that would have prevented the

alleged injuries.  Instead, in his complaint, the plaintiff alleges that the defendants failed

to train properly defendant Pinto on the use of the taser by "failing to instruct [defendant

Pinto] that a person in custody locked in the back of a police car and in handcuffs cannot

be shot with a gun or a taser."  Doc. No. 1 at ¶ 26.

The record demonstrates that North Catasauqua had several written policies in

place at the time of the plaintiff's arrest.  One policy, entitled "Taser X-26 Use of Force

Policy" was promulgated on December 18, 2006.  <u>See</u> Doc. No. 36-17.  That policy

stated that its purpose was "to authorize the use of a Conducted Energy Weapon [taser] as

a control measure."  <u>Id.</u> at 1.  It further stated that "[a]ll sworn personnel must meet and

comply" with its requirements.  <u>Id.</u>

---

[8] Thus, eight factors are considered when evaluating the totality of the circumstances: (1) the severity of
the crime; (2) the immediate threat posed by the suspect to officers or others; (3) whether the suspect was
actively resisting arrest or evading arrest by flight; (4) whether the suspect is violent or dangerous; (5) the
duration of the force; (6)whether the force was used to make an arrest; (7) the possibility that the suspect
is armed; and (8) the number of people with whom the police must contend.  <u>Patrick v. Moorman</u>, 536 F.
App'x 255, 258 (3d Cir. 2013)(citing <u>Sharrar</u>, 128 F.3d at 822).

North Catasauqua's Taser X-26 Use of Force Policy also contained guidance regarding the type and frequency of training that each North Catasauqua police officer in the Borough must receive.  It noted:

> All personnel must be certified as a user by a TASER Certified instructor prior to being authorized to deploy the device in the field.  This training shall consist of a minimum of four hours of instruction with the successful completion of a written exam and proficiency exam.  In addition, all certified personnel must attend annual in-service training to remain certified. Qualification records shall be kept by the TASER Certified Instructor.

Id. at 2.  Thus, all North Catasauqua police officers were required to not only obtain an initial proficiency certification in taser use, but also were required to receive annual training.

Additionally, North Catasauqua's policy contained clear limitations on when a police officer should utilize a taser.  See id. at 5.  For example, police officers were instructed not to use the taser on subjects who are: (1) handcuffed, unless they are physically violent or otherwise uncontrollable; (2) in the control of an Officer and pose no immediate threat of violence to self or others; and (3) in the control of an officer and are not actively resisting arrest.  See id.  The plaintiff has provided no evidence that North Catasauqua police officers were instructed to deviate from this policy. Instead, what the record demonstrates is that there is no support to the plaintiff's contention that Chief Moyer sent his "officers into the field believing that they had unlimited discretion to taser a handcuffed arrestee already in custody."  Doc. No. 43 at 12.

Officer Pinto was not only subject to this policy, but he also complied with its training requirements.  Officer Pinto received taser training on December 21, 2012 from the Taser Training Academy.  See Doc. No. 36-20.  As part of that training program, which he attended less than three months before the plaintiff's arrest, defendant Pinto passed a written examination on the use of the taser.  Id.

The North Catasauqua defendants have provided the Court with a copy of the slides used to train defendant Pinto at the December 2012 training session.  See generally Doc. No. 36-21.  At that training session, defendant Pinto and other attendees were instructed on the appropriate use of a taser, which included instructions, inter alia, that:

- Reasonable efforts should be made to minimize the number of taser exposures and resulting physiologic and metabolic effects.
- Multiple taser applications cannot be justified solely on the grounds that a suspect fails to comply with a command.  Rather, there must be other indications that the suspect is either an immediate threat or is about to flee, especially when there is more than one officer present to assist in controlling the situation.
- The decision to apply multiple taser applications must take into consideration whether a suspect is capable of complying with the officer's commands.
- Officers should avoid multiple, repeated, prolonged or continuous taser exposures unless necessary to counter a reasonably perceived threat or threats and such use is legally justifiable.
- An officer should only apply the number of cycles reasonably necessary to capture, control, or restrain the subject.
- If multiple discharges are required or if extended exposure is necessary, then the officer should carefully observe the subject and provide breaks in the exposure when practicable.

Id. at pp N. CATA01219, 01251, 01252, 01255, 01343, and 1344.  The plaintiff has not provided any evidence that the defendants deviated from these training slides or instructed its police officers to ignore the principals and commands contained in the

training materials.  Furthermore, the record shows that in addition to attending the

training session on December 21, 2012, defendant Pinto also sat for and passed a

certification test.  See Doc. No. 36-22.

Thus, there is no evidence that either defendant North Catasauqua or defendant

Moyer showed a deliberate indifference to the constitutional rights of citizens.  Nor has

the plaintiff provided any evidence that either the defendant borough or defendant Moyer

had received prior complaints about their officers' taser use.  As such, the plaintiff has

failed to establish that there was a need for more or different training that was so obvious

that the failure to implement such additional or different training would likely result in

the violation of constitutional rights.  Instead, the policy and training in place addressed

the need to evaluate the totality of the circumstances when deciding whether to tase an

individual suspect.  The policy further highlighted the need to minimize exposure to taser

applications.  Therefore, because the plaintiff has failed to demonstrate deliberate

indifference, defendant North Catasauqua and defendant Moyer are entitled to summary

judgment on the plaintiff's failure to train claim.

### b.  Defendants Catasauqua and Chief Kish

The plaintiff also fails to identify any specific training that the defendant

Catasauqua and/or defendant Kish should have provided defendant Saborsky that would

have prevented the alleged injuries.  Like with the defendant North Catasauqua and

defendant Moyer, the plaintiff alleges that the defendants Catasauqua and Kish violated

Section 1983 by "failing to instruct [defendant Saborsky] that a person in custody locked

in the back of a police car and in handcuffs cannot be shot with a gun or a taser."  Doc. No. 1 at ¶ 34.

Defendants Catasauqua and Kish seemingly argue that summary judgment is appropriate because they complied with Pennsylvania's training requirements for police officers.  See Doc. No. 38-2 at 7–9.  They note that under Pennsylvania law, "[a]ll persons employed as police officers in the Commonwealth must be certified by [Municipal Police Officers Education and Training Commission ('MPOETC')]."  Id. at 9. Thus, because defendant Saborsky was "a properly trained and certified police officer under Pennsylvania law"[9] they argue that they are entitled to summary judgment on the plaintiff's failure to train claims because Monell liability is inapplicable.  See id. at 7–9.

This argument, however, is unpersuasive. The Catasauqua defendants are correct that in Pennsylvania the training of a police officer is governed by state law, as all police officers must by statute be certified by MPOETC.  See 53 Pa. C.S.A. § 2167.  Act 120 and Act 180 training, the training required by law, however, does not specifically address the use of a taser.  See 37 Pa. Code § 203.51-203.52; see also Geist v. Ammary, 40 F.Supp.3d 467, 486 n.67 (E.D. Pa. 2014) (finding defendant borough's argument that Act 120 training for police officers precluded a Monell claim to be unavailing).  Thus, the Catasauqua defendants are not entitled to summary judgment simply because they complied with Pennsylvania's statutorily required police officer training.[10]

---

[9] Under Pennsylvania law, MPOTEC certification requires that all police officers "receive both basic training (i.e., Act 120 Training) and annual training (i.e., Act 180 training)." Doc. No. 38-2 at 7 (citing 53 Pa.C.S. § 2161).

[10] In support of this argument, defendants Borough of Catasauqua and Kish cite Carswell v. Borough of Homestead, 381 F.3d 235 (3d Cir. 2004).  In Carswell, the defendant police chief testified that the

The record does demonstrate, however, that defendant Saborsky did receive training on taser user.  <u>See</u> Saborsky Dep. 24:8-10.  She first received taser training from the Lackawanna Police Department in 2009, when she graduated from the police academy.  Saborsky Dep. 24:11-16.  After she was hired as a part-time Catasauqua police officer, and prior to the plaintiff's arrest on March 9, 2013, defendant Saborsky received additional taser training and testing and was recertified in taser use on three occasions: February 28, 2011, April 5, 2012, and November 28, 2012.  Doc. No. 39 at ¶ 6.  The last such training session occurred less than 6 months before the plaintiff's arrest.[11]  Thus, defendant Saborsky received taser training at least once a year, as did all other officers within the defendant Borough of Catasauqua's police department[12].  <u>Id.</u> at ¶ 14.

---

boroughs officers attended annual in-service courses "where they stud[ied], among other subjects, relevant court opinions."  <u>Id.</u>at 245.  The police chief was present at the annual training sessions.  <u>Id.</u> Further, he testified that he had personally directed his officers to become familiar with the borough's updated policy manual, "which covered the 'continuum of force.'"  <u>Id.</u>  The record, however, did not establish a lack of training in the use of deadly force that amounted to a deliberate indifference.  <u>Id.</u>  Nor was the plaintiff able to demonstrate a pattern of underlying constitutional violations such that the defendant borough should have known that its training program was inadequate.  <u>Id.</u>  Because the plaintiff failed to meet its burden of demonstrating deliberate indifference and also failed to demonstrate that the defendant's actions caused a constitutional violation, she "failed to present evidence from which a reasonable jury could find municipal liability."  <u>Id.</u>  Unlike what the plaintiff seems to suggest, this case does not stand for the proposition that a borough's compliance with a state's training program entitles a borough to summary judgment on a failure to train claim.

[11] Defendants Borough of Catasauqua and Kish did not provide the court with the content of the training sessions that defendant Saborsky attended.  Instead, for the last training and certification that defendant Saborsky received in November 2012, the defendants provided a copy of the "Version 18: Taser X26 Electronic Control Device (ECD) Certification Test)" that defendant Saborsky took and passed.  <u>See</u> Doc. No. 39-1 at 16.  This test bears the emblem of the "Taser Training Academy."  <u>Id.</u>  This is the same emblem that appears on the training materials that were provided to the court by the defendants Borough of North Catasauqua and Moyer.  <u>See</u> Doc. No. 36-21.

[12] Defendant Saborsky testified that the reason that she received taser training twice in 2012 was to ensure that she would be on the same training schedule as the rest of the department.  <u>See</u> Saborsky Dep. 55:14-17.

Defendant Saborsky was trained on the importance of limiting the number of exposures to a taser.  The first question on her certification exam from November 2012 asked:

> In deploying an ECD, the law enforcement officer should:
> a) Use the least number of ECD discharges to accomplish lawful objectives
> b) Keep pulling the trigger until the subject submits
> c) Hold the trigger back (continuous ECD discharge) as long as it takes until the person submits to the officer's commands
> d) Use the ECD as a torture device to gain the subject's complete compliance.

Doc. No. 39-1 at 16.  Defendant Saborsky chose the correct answer, option "a."  Id.

The plaintiff has not provided any evidence that defendant Catasauqua and/or defendant Kish instructed defendant Saborsky to deviate from her training.  Nor has the plaintiff provided any evidence that either defendant Catasauqua or defendant Kish knew that defendant Saborsky had a history of misusing her taser prior to the plaintiff's arrest such that the need for different training was obvious.[13]   Therefore, because the plaintiff has failed to demonstrate deliberate indifference, defendant Catasauqua and defendant Kish also are entitled to summary judgment on the plaintiff's failure to train claim.

**B.  Failure to supervise**

As I noted above, Section 1983 claims based upon a <u>respondeat</u> <u>superior</u> theory of liability are barred under <u>Monell</u>. <u>See</u> <u>Montgomery v. De Simone</u>, 159 F.3d 120, 127 (3d

---

[13] The plaintiff seemingly argues that because defendant Kish never investigated the excessive force claim against defendant Saborsky that arose from the plaintiff's arrest, the defendants should have been on notice that further training was warranted.  <u>See</u> Doc. No. 42 at ¶ 9.  Whether or not the defendants investigated the incident that underlies this claim does not have any effect on whether or not they failed to train defendant Saborsky in the appropriate usage of the taser and whether such failure constituted deliberate indifference.

Cir. 1998).  Thus, to establish a failure to supervise claim under Section 1983, a plaintiff

must:

> (1) identify the specific supervisory practice or procedure that the supervisor failed to employ, and show that (2) the existing custom and practice without the identified, absent custom or procedure created an unreasonable risk of the ultimate injury, (3) the supervisor was aware that this unreasonable risk existed, (4) the supervisor was indifferent to the risk; and (5) the underling's violation resulted from the supervisor's failure to employ that supervisory practice or procedure.

Brown, 269 F.3d at 216; see also Sample v. Diecks, 885 F.2d 1099, 1118 (3d Cir. 1989).

A plaintiff must do more, however, than merely "argue that the constitutionally

cognizable injury would not have occurred if the superior had done more than he or she

did."  Id. (quoting Sample, 885 F.2d at 1118).   Rather, the plaintiff must "identify

specific acts or omissions of the supervisor that evidence deliberate indifference and

persuade the court that there is a relationship between the identified deficiency and the

ultimate injury." Id. (quoting Sample, 885 F.2d at 118)(internal quotation marks omitted).

Thus, the plaintiff must demonstrate that the supervisor's action or inaction was the

"moving force [behind] the constitutional violation."  Ricker v. Weston, 27 F.App'x 113,

119 (quoting City of Canton v. Harris, 489 US 378, 391 (1989))(internal quotation marks

omitted).

Here, the plaintiff essentially argues that the defendants failed to supervise the

defendant because they failed to: (1) stop the defendant officers from firing their tasers;[14]

---

[14] For an individual defendant to have liability under § 1983, he or she "must have personal involvement in the alleged wrongdoing." Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir.2005).  A plaintiff can

(2) discipline the defendant officers after learning that they had used the taser on plaintiff on the night of the incident; and (3) upon learning of the incident, preserve evidence of misconduct.  See Doc. No. 1 at ¶¶ 26, 34, 27, 35.  Because the plaintiff cannot demonstrate that the supervisors' actions were the "moving force" behind the alleged constitutional violations, the defendant boroughs and police chiefs are entitled to summary judgment.

The plaintiff offers evidence that the neither the defendant police chiefs nor the defendant boroughs disciplined the defendant police officers for their actions during the course of his arrest.  The failure to discipline after the incident, however, cannot be the "moving force" behind the defendant police officers' use of the taser.  The plaintiff also argues that the defendant boroughs and police chiefs should be held liable for the failure to supervise because evidence from the night in question was not preserved.  He states in his brief in opposition of summary judgment that "[t]he Saborsky vehicle had a video/audio camera. There should have been audio transmission on the Saborsky tape. It was erased." Doc. No. 43 at 6.  Other than this statement, plaintiff has pointed to no evidence in the record that demonstrates that the tape was purposefully erased or that there was a deliberate effort not to preserve evidence from the incident.  Furthermore,

---

demonstrate that an individual was personally involved by demonstrating that that individual either personally directed the complained of action or had actual knowledge of the action and acquiesced to it. Id.; see also Ricker v. Weston, 27 F. App'x 113, 119 (3d Cir. 2002) ("A supervisor may be liable under 42 U.S.C. § 1983 for his or her subordinate's unlawful conduct if he or she directed, encouraged, tolerated, or acquiesced in that conduct.")  Here, the record contains no evidence that either defendant Moyer or defendant Kish was present at the scene of the plaintiff's arrest.  Therefore, to the extent that plaintiff alleges that the police chief defendants failed to supervise their respective officers during the incident itself, plaintiff's claims against defendant Moyer and defendant Kish must fail.

even if the plaintiff had offered evidence that the defendants borough and police chiefs did delete the evidence after the incident, conduct that would be deplorable, like the failure to discipline, such actions <u>after the incident</u>, cannot be the "moving force" behind the defendant police officers' use of the taser.  Therefore, the defendant boroughs and police chiefs are entitled to summary judgment on the plaintiff's failure to supervise claims.

## IV.    CONCLUSION

The plaintiff has failed to demonstrate that there are genuine disputes of material fact with regards to his failure to train and failure to supervise claims against the defendant boroughs and police chiefs.  As such, for the reasons stated above, I will grant defendants North Catasauqua, Catasauqua, Kish, and Moyer's motions for summary judgment.

An appropriate Order follows.